**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 32330 & 32331**

| | |
|---|---|
| **STATE OF IDAHO,** )<br>)<br>    **Plaintiff-Respondent,** )<br>)<br>**v.** )<br>)<br>**JOHN CORNELL ANDERSON, III,** )<br>)<br>    **Defendant-Appellant.** )<br>)<br>_____ ) | **2006 Opinion No. 70**<br><br>**Filed: October 19, 2006**<br><br>**Stephen W. Kenyon, Clerk** |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. John T. Mitchell, District Judge.

Judgments of conviction for misdemeanor domestic battery and felony harassing a witness, <u>affirmed</u>.

Rude, Jackson & Daugharty, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Courtney E. Beebe, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Chief Judge

John Cornell Anderson, III, appeals from his judgments of conviction for for misdemeanor domestic battery and felony harassing a witness.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Anderson shoved his wife several times in the front yard of his girlfriend's residence, and a neighbor phoned for the police upon witnessing the incident.  Two police officers responded and eventually arrested Anderson, citing him for domestic battery.  I.C. § 18-918(3)(b).  Several days after this incident, Anderson left a voicemail for one of the arresting officers.   In the voicemail, Anderson identified himself, noted the pending domestic battery charge, and made threatening statements directed at the officer regarding the officer's potential testimony at trial.

1

The officer saved a recording of the voicemail and reported Anderson's actions to the prosecutor's office.

The state charged Anderson with harassing a witness.[1]  I.C. § 18-2604(3).  The charges were consolidated for trial by the district court.  Anderson waived his right to counsel and chose to represent himself through all stages of the case, including the jury trial.  Anderson was found guilty by a jury of both charges.  At sentencing, however, Anderson acquired counsel.  The district court sentenced Anderson to 180 days incarceration for the misdemeanor domestic battery and a unified sentence of four years, with a minimum period of confinement of one year, for felony harassing a witness.  Both sentences were suspended and Anderson was placed on probation.  Anderson appeals.

## II.

## ANALYSIS

On appeal, Anderson asserts his waiver of counsel was invalid.  Anderson also argues the jury instructions regarding his charge of felony harassing a witness were erroneous.[2]

### A.  Waiver of Counsel

Anderson asserts his waiver of his right to counsel was invalid because the district court failed to adequately warn Anderson of the risks of proceeding to trial without an attorney.  Anderson argues the district court should have been aware of his inability to represent himself at trial and should have explained to him the complexities of the trial process and all the elements of the charges he was facing.

When reviewing a lower court's determination regarding the waiver of a constitutional right, we accept the trial court's findings of fact if supported by substantial evidence; however, we freely review the court's application of constitutional requirements to the facts as found. *State v. Hoffman*, 116 Idaho 689, 691, 778 P.2d 811, 813 (Ct. App. 1989).  A criminal defendant has a constitutional right to the assistance of counsel at all critical stages of the criminal process.

---

[1]    Anderson left a similarly threatening message on the other arresting officer's voicemail.  However, the state later dismissed a second charge of harassing a witness as to the call to the second officer.

[2]    In his initial brief to this Court, Anderson also asserted the amended information filed by the state was deficient but withdrew the issue in his reply brief.

*Gideon v. Wainwright,* 372 U.S. 335, 345 (1963); *State v. Blevins*, 108 Idaho 239, 241-42, 697 P.2d 1253, 1255-56 (Ct. App. 1985). An accused also has the right to waive the assistance of counsel and to represent himself or herself. *See Faretta v. California*, 422 U.S. 806 (1975); *State v. Averett,* 142 Idaho 879, 885, 136 P.3d 350, 356 (Ct. App. 2006). A waiver of the right to counsel is valid only if it was effected knowingly, voluntarily, and intelligently. *Averett,* 142 Idaho at 885, 136 P.3d at 356. The burden is upon the state to show that the waiver satisfied this standard. *State v. Hunnel,* 125 Idaho 623, 625, 873 P.2d 877, 879 (1994). If there was a deprivation of the right to counsel through the trial court's acceptance of an invalid waiver, the error is fundamental and therefore necessitates our independent review although the claim was not raised below. *See Hunnel,* 125 Idaho at 625, 873 P.2d at 879; *State v. King,* 131 Idaho 374, 376, 957 P.2d 352, 354 (Ct. App. 1998).

There is no uniformity in American courts as to the precise requirements for a valid waiver of the right to counsel or even whether a specific judicial admonition regarding the risks of self-representation is necessary in all situations. *See State v. Jackson,* 140 Idaho 636, 639, 97 P.3d 1025, 1028 (Ct. App. 2004). Idaho courts examine the totality of the circumstances in determining if a waiver of the right to counsel was valid. *State v. Lovelace,* 140 Idaho 53, 64, 90 P.3d 278, 289 (2003); *King,* 131 Idaho at 376, 957 P.2d at 354. The analysis of whether a defendant's waiver is valid rests upon the individual facts of the case. *Hunnel,* 125 Idaho at 625, 873 P.2d at 879; *see also King,* 131 Idaho at 376, 957 P.2d at 354 (valid waiver of counsel is a question of fact turning upon the defendant's state of mind). For a waiver to be knowing and intelligent the defendant must be aware of the nature of the charges filed against him or her, the penalties that may result from those charges and, the dangers and disadvantages of self-representation. *See Lovelace,* 140 Idaho 53, 64, 90 P.3d 278, 289; *State v. Lankford,* 116 Idaho 860, 865, 781 P.2d 197, 202 (1989); *see also United States v. Harris,* 683 F.2d 322, 324-25 (9th Cir. 1982).

At Anderson's arraignment hearing, the district court began by determining, through a serious of questions, that Anderson had graduated from high school, had no problem reading or writing the English language, was not under the influence of alcohol or controlled substances, and did not suffer from a mental condition that would in any way hinder his understanding of why he was in court. The district court went on to ask Anderson if the magistrate presiding over

his preliminary hearing had discussed with Anderson the hazards and perils of self-representation. Anderson affirmed that he had such a discussion at the preliminary hearing.

After this initial exchange, the district court went on to explain to Anderson the statutory maximum sentences he could respectively receive for both the misdemeanor and the felony he was charged with. At Anderson's request, the district court read the information. The district court then explained to Anderson the types of pleas he could enter and thereafter engaged in a specific dialogue with Anderson about the hazards of pro se representation:

> [COURT]: Okay, I have no idea what plea you're going to enter, but I have to cover my cautions to you at this time. You understand that in deciding whether or not it's a good idea to plead guilty to any criminal offense it's always a good idea to have the advice of counsel or an attorney. You understand that?
>
> [ANDERSON]: Yes.
>
> [COURT]: Okay. An attorney is familiar with the statutes that are involved. An attorney is familiar with the rules of procedure that are involved throughout the criminal proceedings, and if you go to trial, an attorney is conversant with the rules of evidence which will apply at trial. Do you understand all of that?
>
> [ANDERSON]: Yes, I do.
>
> [COURT]: If you choose to represent yourself and continue to represent yourself, I have to hold you to the same level of knowledge and skill that I would hold an attorney to. Do you understand that?
>
> [ANDERSON]: Yes, I do.
>
> [COURT]: In other words, I have to assume that you know the rules of procedure, the rules of evidence, all the rules of law, the statutes that are involved here just as well as any criminal defense attorney would. You understand that?
>
> [ANDERSON]: Yes, I do.
>
> [COURT]: And I can't help you in the proceedings. I can't give you legal advice. I can't guide you in any way. Do you understand that?
>
> [ANDERSON]: Yes, I do.
>
> [COURT]: Okay. And if at any time you change your mind and decide that you would like to get an attorney, I will be happy to give you time to locate an attorney. Do you understand that?
>
> [ANDERSON]: Yes.
>
> [COURT]: All right. I don't know if you qualify for a public defender or not, but you can also make application for the services of the public defender's office free of charge. Do you understand that?
>
> [ANDERSON]: Yes.

Anderson then declined the services of an attorney and pled not guilty. At the pre-trial conference, the district court again informed Anderson that it had to be sure Anderson

4

understood the risks of proceeding to trial on his own. The district court also offered, again, to move the trial to a later date in order to provide Anderson an opportunity to retain private counsel or to apply for the services of a public defender. Anderson declined the offer to obtain counsel. On the first day of trial, the district court discussed with Anderson the plea agreement offered by the state and related to him the district court's willingness to retain jurisdiction and allow him to accept the plea. Before beginning the trial the district court, once again, inquired with Anderson about his waiver of counsel:

[COURT]: All right. Once again, you understand that, Mr. Anderson, you're entitled to an attorney?
[ANDERSON]: Yes.
[COURT]: I'm happy to appoint one if you want.
[ANDERSON]: No, thank you.
[COURT]: Okay. Comfortable proceeding by yourself even though you know about the risks of proceeding on your own?
[ANDERSON]: Yes, I do.

Contrary to Anderson's assertions, the district court need not determine if Anderson was capable of representing himself, nor was the district court responsible for providing Anderson with any detailed legal advice or explanations. *See Lovelace,* 140 Idaho at 64, 90 P.3d at 289. The record establishes that the district court performed a specific inquiry regarding Anderson's waiver of his right to counsel. The record also demonstrates the district court ensured Anderson was made aware of the risks and hazard of representing himself in criminal proceedings, the most severe of which was that Anderson would be held to the same legal knowledge as a lawyer. Anderson affirmed that he understood these risks. The district court discussed with Anderson the potential penalties for the crimes he was charged with and offered to delay the proceedings to allow Anderson to obtain counsel on several occasions. Therefore, the district court provided Anderson with a detailed admonition of the risks of waiving his right to counsel. Under the totality of the circumstances, the record demonstrates that Anderson knowingly and intelligently waived his right to counsel.

Anderson's argument on appeal also suggests whatever waiver he made at the arraignment hearing was insufficient to qualify as a valid waiver of counsel for his trial proceedings. A competent waiver of the right to counsel made before a court carries forward and is applicable to all further proceedings unless the waiver was limited to a particular stage of the proceedings. *Lovelace,* 140 Idaho at 64-65, 90 P.3d at 289-90. In *Lovelace*, the defendant

validly waived his right to counsel in a previous proceeding. On appeal, the defendant argued his waiver was invalid at the sentencing proceedings as the district court should have revisited his waiver of counsel at the beginning of that proceeding, but did not. The Idaho Supreme Court concluded that, as the defendant had previously given a valid waiver of his right to counsel, the district court had no duty to conduct additional inquiries into the waiver. *Lovelace,* 140 Idaho at 65, 90 P.3d at 290.

The record does not indicate that Anderson's knowing and intelligent waiver of his right to counsel was confined to his arraignment. At the arraignment proceedings, the district court specifically discussed with Anderson the possibility of going to trial without the assistance of counsel and what would be expected of Anderson if he chose to represent himself at trial. Anderson's competent waiver of his right to counsel established at his arraignment was applicable to all further proceedings. We note also that, even though the district court had no duty to conduct further inquires into Anderson's previous waiver at the beginning of the trial, the district court did again ask Anderson if he wanted an attorney and if he was comfortable proceeding to trial given the risks of self-representation. Anderson unequivocally denied the need for counsel and assured the district court he was comfortable with representing himself at trial. Accordingly, no error has been shown in this regard.

**B.     Jury Instructions**

Anderson asserts certain jury instructions were erroneous. At trial, Anderson did not object to the allegedly deficient jury instructions. Anderson now raises this issue for the first time on appeal.

Prior to July 2004, the failure to object to an instruction at trial in a criminal case did not constitute a waiver of any objection to the instruction on appeal. *See State v. Cuevas-Hernandez*, 140 Idaho 373, 375, 93 P.3d 704, 706 (Ct. App. 2004). Effective July 1, 2004, Idaho Criminal Rule 30(b) provides that "no party may assign as error the giving of or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict." Anderson's trial commenced on June 6, 2005, and because he did not object to any instructions prior to the retirement of the jury he has not preserved this issue for appeal.

In his reply brief, Anderson argues for the first time that the alleged errors in the jury instructions rise to the level of fundamental error and must therefore be considered by this Court. In support of his position, Anderson cites one pre-amendment case. We disagree. Fundamental

6

error is that error which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process. *State v. Sheahan,* 139 Idaho 267, 281, 77 P.3d 956, 970 (2003). However, the Idaho Supreme Court, in amending I.C.R. 30(b), has indicated that jury instruction error is now specifically not preserved for appeal absent an objection at trial. Allowing a defendant to raise for the first time on appeal the issue of an erroneous jury instruction by arguing it is "fundamental error" after he or she failed to properly preserve the issue in the trial court, would render the relevant provision of I.C.R. 30(b) a nullity.

Anderson failed to preserve the issue of erroneous jury instruction for appeal as required by I.C.R. 30(b). Therefore, we decline to consider the issue.[3]

## III.

## CONCLUSION

The record demonstrates Anderson's waiver of his right to counsel and decision to represent himself at trial was knowing and voluntary. Anderson failed to object to any alleged errors in the jury instructions at trial and consequently failed to preserve any assertions of jury instruction error for appeal. Accordingly, Anderson's judgments of conviction are affirmed.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**

---

[3]     We acknowledge that a defendant represented by counsel may, however, be able to bring an action pursuant to the Uniform Post-Conviction Relief Act, wherein a failure to object to a clearly erroneous instruction constitutes ineffective assistance of counsel.