97 P.3d 1025 (2004)
104 Idaho 636
STATE of Idaho, Plaintiff-Respondent,
v.
Curtis Edward JACKSON aka James A. Ballard, Defendant-Appellant.
No. 29125.
Court of Appeals of Idaho.
August 24, 2004.
*1026 Molly J. Huskey, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.
Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cud, Deputy Attorney General, Boise, for respondent.
LANSING, Chief Judge.
Curtis Edward Jackson appeals from his judgment of conviction for possession of methamphetamine and possession of drug paraphernalia. Jackson contends that the district court improperly accepted his waiver of his right to counsel without having adequately cautioned him concerning the dangers of self-representation. We reverse and remand for a new trial.

I.

FACTUAL & PROCEDURAL BACKGROUND
Jackson was charged with possession of methamphetamine, Idaho Code § 37-2732(c), and possession of drug paraphernalia, I.C. § 37-2734A, and the prosecution requested a persistent violator sentence enhancement. Jackson requested and the district court appointed a public defender, David Smethers. A week later, Jackson asked the court to appoint a different attorney, or in the alternative, to allow Jackson to proceed pro se. The district court denied the request, and ordered that Jackson submit any motions through counsel.
At a hearing on October 22, 2002, Jackson asked permission to represent himself concerning a motion to dismiss for a violation of speedy trial and due process rights, and he *1027 requested substitute counsel if the case should proceed to trial. As the basis for these requests, Jackson asserted that he and Smethers had a personality conflict, that Smethers had refused to communicate properly with Jackson and that Smethers displayed unjustified anger towards Jackson. When questioned by the court, Smethers responded that he believed Jackson was trying to create the personality conflict, that Jackson did not like Smethers's assessment of part of Jackson's case, and that Jackson was not forthcoming with answers to Smethers's questions. Smethers denied having any anger towards Jackson, and said he was willing and able to continue the representation. The district court found that there was no substantial basis for Jackson to either represent himself pro se or to receive substitute counsel. Trial was scheduled for December 10.
On November 22, Jackson filed two pro se motions  a motion for supplemental discovery and a motion to either disqualify Smethers or to represent himself as co-counsel with Smethers. The district court heard argument on both motions on December 3. Regarding Jackson's desire to represent himself, the following colloquy took place:
THE COURT: Now, if you want to represent yourself, certainly, that's a right that you have. If you want to have standby counsel, I just need to ask some questions of you.
JACKSON: Yes, sir.
....
THE COURT: Okay. Why is it that you want to, then, represent yourself?
JACKSON: Based on my experiences with the motion to dismiss and my experiences with Mr. Smethers up until now, I'm positive I can present a better case in my defense to the jury than Mr. Smethers.
THE COURT: Well, I'm not convinced of that, so, at this point, I am not going to appoint substitute counsel. I can't find from the record here that Mr. Smethers has not done his job. He filed a motion to dismiss in a timely manner. He argued it effectively. He indicates he is prepared for trial. He has indicated that you have not given him a list of witnesses to subpoena. That was not a failure on his part to prepare witnesses for trial. And so, as far as dismissing him as your counsel and employing substitute counsel, I'll deny your motion or your request.
Is it your request that you represent yourself at trial with the assistance  with counsel from the Public Defender's Office being present 
JACKSON: Yes, Your Honor.
THE COURT:  to assist you with questioning?
JACKSON: Yes, Your Honor ...
....
THE COURT: Mr. [Jackson], you will be representing yourself. Do you feel you're up to the task with the assistance of counsel?
JACKSON: I don't feel comfortable with that at all, actually.
THE COURT: Then, your choice is you have a very capable attorney sitting next to you that would represent you.
JACKSON: He is one of the best around. That's what I understand, yes.
THE COURT: That's my  that's how we'll proceed at this point. If you change your mind and want Mr. Smethers to be your counsel  otherwise, you will be representing yourself with a standby counsel.
On December 10, the scheduled trial date, Jackson moved to continue the trial, contending that he had not received all of the documents in the court file and had not completed discovery. After questioning Jackson, the public defender and the prosecutor, the district court found that discovery was complete and there were no grounds to continue the trial. The prosecutor requested that the district court make findings that Jackson had knowingly and voluntarily waived his right to counsel but the court said that it had already done so. The trial then was conducted, with *1028 Jackson acting pro se and having Smethers present as standby counsel.
The drug possession charge against Jackson was based upon methamphetamine found in the pocket of a jacket that Jackson had worn. At trial, Jackson asserted that the jacket and methamphetamine did not belong to him but that he had found the jacket and put it on to keep warm a few hours before he came in contact with the police. Nevertheless, Jackson also told the jury in his opening statement and his testimony that he had received and injected other methamphetamine on the date in question, but argued it did not constitute possession because he had not held the drugs for any time. He also argued that the jury should not find him guilty based on the methamphetamine that he injected because the prosecution was based upon his alleged possession of different methamphetamine. He also admitted to the jury that he had possessed marijuana, for which he had not been charged. The jury found Jackson guilty of both charged offenses.
Jackson appeals, contending that he did not knowingly, voluntarily, and intelligently waive his right to assistance of counsel, and that the district court abused its discretion in denying Jackson's motion to postpone the trial.

II.

ANALYSIS
Jackson first contends that he did not knowingly, voluntarily, and intelligently waive his constitutional and statutory rights to assistance of counsel under the Sixth Amendment to the United States Constitution. The Sixth Amendment guarantees indigent criminal defendants the right to appointed counsel. Gideon v. Wainwright, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799, 805 (1963); Pharris v. State, 91 Idaho 456, 458, 424 P.2d 390, 392 (1967). A defendant may reject a court-appointed attorney, however, and conduct his own defense, if the defendant has been made aware of the dangers inherent in self-representation so that such waiver is knowingly and intelligently made. Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975); State v. Clayton, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980). The burden is upon the State to show that the waiver satisfied this standard. State v. Hunnel, 125 Idaho 623, 625, 873 P.2d 877, 879 (1994). If there was a deprivation of the right to counsel through the trial court's acceptance of an invalid waiver, the error is fundamental and therefore necessitates our review although the claim was not raised below. Id.
Jackson argues that in order for his waiver to be valid, the record must show that the trial court properly apprised him of the problems and perils inherent in self-representation to ensure that the waiver was knowingly and intelligently made. The colloquy that occurred in his case, Jackson argues, was inadequate to meet this test.
There is not uniformity among American courts regarding the precise requirements for a valid waiver of the right to counsel. The United States Supreme Court held in Faretta that criminal defendants have a constitutional right to represent themselves but cautioned that the trial court must ensure that the defendant's waiver of the right to counsel is knowing and intelligent:
When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

Faretta, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581 (emphasis added) (citations omitted). Relying on this statement, some courts have held that a specific warning from the trial court concerning the dangers of self-representation is a prerequisite for a constitutionally valid waiver. See, e.g., McMahon v. Fulcomer, 821 F.2d 934, 945-46 (3rd Cir. *1029 1987) (waiver of Sixth Amendment right to counsel invalid where trial judge failed to conduct "searching inquiry" or colloquy as to dangers and disadvantages of proceeding to trial pro se); People v. Hall, 218 Cal.App.3d 1102, 267 Cal.Rptr. 494, 497 (1990) (before a criminal defendant may represent himself at a deferred sentencing hearing, a Faretta hearing must be held on the record to advise the defendant of the disadvantages of not being represented by counsel); State v. Young, 626 So.2d 655, 656 (Fla.1993) (reversible error where trial judge failed to conduct Faretta inquiry before defendant represented himself, even if defendant were using right to counsel to frustrate and delay trial); People v. Sawyer, 57 N.Y.2d 12, 453 N.Y.S.2d 418, 438 N.E.2d 1133, 1138 (1982) (waiver of counsel inadequate where trial court failed to undertake "searching inquiry" to advise defendant of dangers of giving up fundamental right of counsel, despite trial court's statements to defendant that he was facing a very serious charge and his interests were probably best served by having a lawyer represent him).
Other courts are of the view that Faretta requires only that the defendants be aware of the disadvantages of proceeding pro se, and that such awareness sometimes can be discerned even in the absence of admonitions from the court. See, e.g., United States v. Stewart, 20 F.3d 911, 917 (8th Cir.1994) ("We will find a valid waiver if a district court adequately warns a defendant or if, on the record as a whole, we determine that the defendant knew and understood the disadvantages of self-representation."); Strozier v. Newsome, 871 F.2d 995, 997 (11th Cir.1989) ("Although a hearing is the preferred route, the absence of a hearing is not fatal since in rare cases the record may support a waiver."); United States v. Kimmel, 672 F.2d 720, 721-22 (9th Cir.1982) (although explanation of risks of self-representation by trial court is preferred to simplify appellate review, test is what accused understood, rather than what court said or understood, so explanations are not always required). See also discussion of the conflict of authorities in McDowell v. United States, 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987) (White, J. dissenting from denial of petition for certiorari).
No reported Idaho appellate decision has squarely considered whether information in the record showing a defendant's knowledge of the risks might substitute for Faretta warnings to demonstrate the validity of a waiver of counsel for a felony trial. In State v. Buzo, 121 Idaho 324, 824 P.2d 899 (Ct.App.1991), this Court addressed the sufficiency of a waiver of counsel at a probation violation hearing. We first held that the waiver was deficient because the defendant was not advised that, if he could not afford an attorney, one would be appointed for him. We then added, "To make an adequate record that a defendant has waived his right to counsel, the court should make the defendant aware of the charges against him, the potential penalties, and the disadvantage of proceedings without counsel." Id. at 328, 824 P.2d at 903. The Idaho Supreme Court subsequently held that a discussion of the hazards of self-representation by the trial court is not necessary to ensure the validity of a waiver when a pro se defendant is pleading guilty to a misdemeanor. Hunnel, 125 Idaho at 626, 873 P.2d at 880; State v. Maxey, 125 Idaho 505, 508-09, 873 P.2d 150, 153-54 (1994). The Maxey opinion suggests, however, that the same may not be true when a defendant intends to represent himself at trial. In holding that warnings from the trial court were not essential to validate the uncounseled misdemeanor guilty plea, the Court emphasized the difference in complexity between self-representation at trial and self-representation in entering a guilty plea:
The dangers of self-representation at trial are obvious. The intricacies of the procedures, the rules of evidence, and the law are sufficient to justify extra care in making sure the defendant appreciates the difficulties in conducting a trial without the assistance of a lawyer. Certainly a guilty plea is an important part of a criminal proceeding. McMann v. Richardson, 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 772 (1970) ("to plead guilty ... frequently involves the making of difficult judgments"). We are not convinced, however, that the judgments that confront a defendant who pleads guilty in a misdemeanor *1030 case are sufficiently difficult to warrant a requirement that the trial court must advise the defendant of the problems inherent in entering a plea without counsel.
Maxey, 125 Idaho at 509, 873 P.2d at 154.
We conclude that even if judicial admonitions are not constitutionally required, Jackson's waiver here was invalid because the record does not otherwise disclose that he, at the time he chose to represent himself, appreciated the risks of proceeding pro se. Although Jackson has a criminal record with charges dating back to 1980, and he demonstrated some ability to file motions and perform legal research, nothing in the record indicates that he ever represented himself in previous criminal proceedings or that he had received Faretta warnings on a previous occasion. Nothing indicates that Jackson understood the dangers and disadvantages of self-representation when he voiced his decision to proceed pro se. The record here is insufficient to demonstrate a valid waiver of his right to counsel at trial.
The State does not contend, nor are we of the view, that the district court's acceptance of Jackson's waiver of counsel without adequate warnings is subject to a harmless error analysis. Some constitutional errors cast such doubt upon the fairness of the trial process that they are deemed prejudicial per se. Deprivation of the right to counsel through trial is among those. See Satterwhite v. Texas, 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284, 293 (1988); United States v. Erskine, 355 F.3d 1161, 1167 (9th Cir.2004).
Because Jackson's waiver of his Sixth Amendment right to counsel was invalid, he is entitled to a new trial with the aid of counsel. We therefore need not address Jackson's contention that the district court abused its discretion in refusing to grant Jackson's motion to continue the trial.
For the foregoing reasons, we vacate the judgment of conviction and remand for a new trial.
Judge PERRY and Judge GUTIERREZ concur.